UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IVELISSE RIOS,

      Plaintiff,

v.                                    CASE NO. 8:22-cv-1084-MCR

ACTING COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION,

      Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision regarding her application for a period of disability and disability insurance benefits ("DIB") and for Supplemental Social Security Income ("SSI").  Following an administrative hearing held on April 19, 2021, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from March 18, 2020, the alleged disability onset date, through November 10, 2021, the date of the ALJ's decision. (Tr. 19.)  Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **REVERSED and REMANDED**.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 10.)

## I.     Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.     Discussion

### A.     Issues on Appeal

Plaintiff raises three issues on appeal.  First, she argues that the ALJ's Residual Functional Capacity ("RFC") assessment was not based on substantial evidence.  (Doc  14. at 3 (emphasis omitted).)  Plaintiff states that "the ALJ's RFC finding is not supported by substantial evidence because it fails to include all the limitations in the opinions which she herself found persuasive, nor did the ALJ explain the exclusion of these limitations."  (*Id.* at 5.)  And "[a]s a result of this error, substantial evidence does not support the ALJ's step 4 finding and meaningful judicial review is precluded; under these circumstances[,] remand is the only appropriate remedy."  (*Id.*)  More specifically, Plaintiff contends:

> Opinions and limitations from both [s]tate [a]gency psychologists were omitted without explanation from the RFC. Yet [the] ALJ found both Dr. Anguas-Keiter and Dr. Green's opinions "persuasive." (Tr. 18). Specifically, Drs. Anguas-Keiter and Green found that Ms. Rios has moderate limitations in her ability to maintain concentration, persistence, and pace, and in her ability to complete [a] normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 96- 97; 154-55). Thus, it is unknown whether the ALJ considered these limitations and chose to omit it [sic] from the ultimate RFC assessment, or whether the ALJ ignored it [sic]. As a result, a meaningful review of the RFC is frustrated.

(*Id.* at 5-6.)

Second, Plaintiff claims that at step four, the ALJ erred by improperly considering the medical opinions in the record.  (*Id.* at 7.)  With respect to this argument, Plaintiff's primary concern is the opinion of Dr. Billie Jo

Hatton, Ph. D.  According to Plaintiff "[t]he ALJ found Dr. Hatton's opinion 'somewhat persuasive.'" (Doc 14. at 12 (citing Tr. 18).)  However, the ALJ also asserted that the opinion was "purportedly vague and did not offer specific vocational limitation or abilities." (*Id.*)  The ALJ further stated that Dr. Hatton "saw the claimant for a single visit, thus the report summarizes only a snapshot in time." (*Id.*)

Plaintiff ultimately disagrees with the ALJ's characterization of Dr. Hatton's assessment and further claims that the ALJ did not provide sufficient reasons for rejecting the opinion.  Instead, Plaintiff argues that the ALJ "impermissibly, relied on her lay assessment to reject the opinion of [the] only examination physician for insufficient reasons." (*Id.* at 14.)  Therefore, Plaintiff argues, "the ALJ improperly rejected Dr. Hatton's medical opinion to formulate a legally insufficient RFC." (*Id.* at 8.)

In Plaintiff's third argument, she focuses on the opinion of  Dr. Thomas Beaman, D.O., who noted that Plaintiff had multiple areas of restricted range of motion.  Plaintiff notes that "the ALJ when discussing Dr. Beaman's finding at step 4, specifically detailed [that] Dr. Beaman observed some diminished range of motion [in] the cervical and lumbar spine.  Yet the RFC and concomitant hypothetical question posed to the vocational expert does not include these results." (*Id.* at 16 (internal citations omitted).)  Plaintiff also notes that "the ALJ did include the following limitation: can perform

4

light work with occasional postural, with the exception of frequent climbing of stairs and ramps"; however, "[w]ithout explanation, the ALJ failed to include in the RFC and hypothetical posed to the vocational expert Dr. Beaman's findings of reduced motion of the cervical and lumbar spines."  (*Id*.) On this basis, Plaintiff argues "it is unknown whether after the ALJ noted Dr. Beaman's additional findings in her summary, she chose to omit it [sic] or whether she ignored it [sic]. Under either scenario, this was legal error . . . ." (*Id*.)

Defendant disagrees with all three of Plaintiff's arguments.  With respect to the first argument, Defendant claims "[t]he ALJ did not commit any error as it relates to including in the RFC all of the limitations from the prior administrative findings." (Doc. 16 at 4 (emphasis omitted).)  Defendant further adds that "Plaintiff's argument lacks merit because the ALJ was not required to include in the RFC all of the limitations from the opinions which she found persuasive, and she was not required to explain the exclusion of those limitations.  (*Id*. at 4-5.)  In support of this argument Defendant claims:

> [T]he ALJ gave Plaintiff the benefit of the doubt in finding at step three she had a moderate limitation with regard to maintaining concentration, persistence, or pace because Plaintiff reported depressed and anxious mood (Tr. 13). However, the ALJ also noted that the objective evidence showed no greater limitations were warranted because she did not manifest deficits in concentration or memory during her routine care appointments and was alert and oriented (Tr. 13-14, 832, 836, 847, 853, 857, 860, 865, 868, 872, 886, 900, 950). The ALJ went on to discuss

that throughout 2020 and 2021, Plaintiff's mental examination findings were generally unremarkable (Tr. 17, 832, 836, 847, 853, 857, 860, 865, 868, 872, 886, 900, 950). Specifically, those records showed she was alert and oriented; had appropriate mood and affect; denied suicidal ideation; exhibited good judgment and insight; and had intact recent and remote memory; (Tr. 17, 832, 836, 847, 853, 857, 860, 865, 868, 872, 886, 900, 950).

The ALJ then acknowledged the dearth of mental health services that Plaintiff has received (Tr. 17). The ALJ went on to discuss the psychological examination performed by Dr. Hatton in which the doctor noted Plaintiff's issues with maintaining focus, but indicated her difficulty focusing could be affected by her depression and anxiety to some extent (Tr. 17, 776). Thereafter, the ALJ acknowledged Plaintiff's symptoms related to her anxiety and depression, but also recognized that her treatment remained conservative, consisting of mere medication prescribed by her primary care physician (Tr. 18, 942). Then, taking all of the evidence into consideration, including the opinions from the prior administrative findings (Tr. 18), the ALJ concluded that although Plaintiff had some mental limitations, the evidence showed she had the capacity to produce the concentrated effort needed to complete tasks with persistence, pace, and reliability with being off task no more than 10% of a workday (Tr. 18).

The substantial evidence discussed and cited above, in addition to the lack of mental health treatment, supports the ALJ's RFC finding as to the time off-task, and Plaintiff points to no law or regulation that would require a different finding or to any evidence that would suggest a different conclusion (Pl. Br. at 6-7). In fact, Plaintiff cited absolutely no evidence related to her time off-task, and thus, has not shown that a ten-percent limitation was insufficient to account for any alleged difficulties she had staying on task or completing a workday without interruptions (Pl. Br. at 6-7).

(*Id.* at 6-7.)

Defendant also disputes Plaintiff's contentions that the ALJ did not

properly address the opinions set forth by the state agency consultants that

6

Plaintiff has moderate limitations related to completing a normal workday or

work week without interruptions:

> Plaintiff fails to recognize that when an ALJ analyzes medical
> opinion evidence, including opinion evidence set forth in the prior
> administrative findings, there is only a source-level articulation
> requirement. *See* 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).
> The regulations do not require the ALJ to address every
> limitation identified by a medical source. *See id*. Additionally,
> ALJs can articulate consideration of multiple opinions/findings in
> a single analysis and do not have to mention every piece of
> evidence in a decision. 20 C.F.R. §§ 404.1520c(b)(1),
> 416.920c(b)(1); *Dyer*, 395 F.3d at 1210. Therefore, the ALJ not
> mentioning the opinion as to Plaintiff's moderate limitation
> related to completing a normal workday without interruptions
> was not an error. Moreover, as discussed above, the ALJ
> explicitly considered and included in the RFC a limitation related
> to Plaintiff's ability to complete a normal workday when she
> found Plaintiff could be off-task ten percent of the day (Tr. 13-14,
> 17-18). And Plaintiff cannot show, and has not even attempted to
> show, that the evidence requires a more restrictive RFC
> limitation.

(*Id*. at 8.)  The Defendant further states:

> As discussed above, the ALJ did not err in her analysis of the
> opinions set forth in the prior administrative findings, did not
> actually omit limitations she should have included in the RFC,
> was not required to adopt the entirety of an opinion she found
> persuasive, and was not required to explain why certain
> limitations were excluded.

(*Id*. at 12.)

As to Plaintiff's second argument, Defendant contends that "[t]he ALJ

properly evaluated the medical evidence from Dr. Hatton and was not

required to develop the record further."  (*Id*. (emphasis omitted).)  In support,

Defendant avers that "Plaintiff fails to realize 20 C.F.R. §§ 404.1520c, 416.920c are only applicable to medical opinions, but Dr. Hatton's statements do not constitute medical opinions.  Therefore, the ALJ was not required to articulate whether she found Dr. Hatton's statements persuasive and did not commit error." (*Id.*)  The Defendant also contends that "[w]hile the [Defendant] maintains the position that Dr. Hatton's consultative examination report did not contain medical opinions subject to a specific analysis under the regulations, to the extent an error was made, it was harmless, and Plaintiff has failed to meet his burden of proving otherwise." (*Id.* at 16.)

With regard to Plaintiff's third argument, Defendant avers that "the ALJ properly evaluated the medical evidence from Dr. Beaman." (*Id.* at 19.) In support, Defendant claims that "[l]ike Dr. Hatton's medical evidence discussed in Section II above, Dr. Beaman's medical evidence certainly did not include a medical opinion as defined by the regulations." (*Id.*)  Moreover, "there were no functional limitations set forth in Dr. Beaman's report that the ALJ could have conceivably included in the RFC." (*Id.* at 20.) Furthermore, "substantial evidence also supported the physical RFC, and the ALJ took Dr. Beaman's examination into consideration in the RFC analysis." (*Id.*)

### B.    The VE's Hearing Testimony

On April 19, 2021, VE Celena Earl, appeared for a telephonic hearing before ALJ Anne Sprague.  (Tr. 41–43.)  During the hypothetical questioning by the ALJ, the VE testified in relevant part as follows:

> Q . . . Now, if we were to assume a hypothetical individual with the claimant's age, education and past relevant work, who would be lifting and carrying no more than 20 pounds occasionally, 10 pounds frequently, standing and walking about six hours in an eight-hour day, sitting in about six hours in an eight hour day, frequent climbing stairs and ramps, occasionally climbing ladders, scaffolds, ropes, balanc[ing], stoop[ing], kneel[ing], crouch[ing], [and] crawl[ing], but would be limited to occasional interaction with the public, and able to produce concentrated effort needed to complete tasks, the persistence, pace and reliability with no more than 10 percent off tasks, could they do any of their past work?
>
> A The housekeeper position, Your honor, and yes, the housekeeper position.
>
> . . .
>
> Q Okay,  are there other jobs such a person could perform?
>
> A Yes, Your Honor. Small part assembler, DOT number 706.684-022, with a strength level of light, and an SVP: 2, in the U.S. there is an estimated 17,800 of these positions. Laundry worker, DOT number 302.685-010, with a strength level of light, and SVP: 2, in the U.S. there is an estimated 19,000 of these positions. Inspector and hand packager, DOT number 559.687-074, with a strength level of light and SVP: 2. In the U.S., there is an estimated 8,800 of these positions.
>
> Q And is this a representative sampling of the jobs?
>
> A Yes, Your Honor.

Q Is your testimony consistent with the DOT?

A Yes, Your Honor, the DOT doesn't address off task time. I base that that on my training, education, and knowledge about jobs performed in the labor market.

Q Okay. For hypothetical two, if you took hypo one, but changed the standing and walking to four hours a day, could they do that past work you just identified?

A Past work would be eliminated, Your Honor.

Q Okay. Could they do the jobs you identified?

A The small parts assembler would remain. It would reduce the number of positions available to an estimated 4,400. The laundry worker would be eliminated and the inspector hand packager would remain, it would reduce the number of positions available to an estimated 2,200.

Q Small parts went from 17,800 to 4,400 or did we hear that mixed up? Let's see.

A Yes, it went to 4,400.

Q For the small parts?

A Yes.

Q Okay, and the inspector, which was 8,800 went down to 2,000 what?

A 200.

Q 200, so it's reduced by ¾?

A Yes, Your Honor.

Q Okay, and if a person would be absent two days a month due to fatigue, would there be jobs?

A No, Your Honor.

(Tr. 42, 55-57.)

### C.    The ALJ's Decision

At step two of the sequential evaluation process,[2] the ALJ found that Plaintiff had the following severe impairments: coronary artery disease, status post coronary artery bypass graft x 4; degenerative disc disease; diabetes mellitus II with peripheral neuropathy; vascular insult to the brain; major depressive disorder; and generalized anxiety disorder.  (Tr. 12.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 13.)

Then, before proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), but with the following limitations:

> [S]he is limited to occasional climbing of ladders, ropes, and scaffolds, and frequent climbing of stairs and ramps. The claimant is limited to occasional balancing, stooping, kneeling, crouching, and crawling. She is limited to occasional interaction with the public. She has the ability to produce the concentrated effort needed to complete tasks with persistence, pace, and reliability with being off task no more than 10% of a workday.

---

[2] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

(Tr. 14.)

In making these findings, the ALJ discussed the evidence of the record. (Tr. 14-19.)  The ALJ determined that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons stated in [the] decision." (Tr. 15.)

The ALJ also addressed the medical opinions of record.  (Tr. 16-19.) First the ALJ discussed the state agency medical and psychological consultants' opinions.  Before finding the state agency psychological and medical opinions persuasive and adopting their assessments, the ALJ discussed their findings in detail:

> The [s]tate agency medical and psychological consultant's [sic] reviewed the record and offered a detailed narrative with references to the medical evidence (Ex. B2A; B3A; B8A; B9A). Although they did not have access to records received at the hearing level, these records did not persuade me to assign additional limitations. The [s]tate agency consultant's [sic] opinions are consistent with the physical examination findings that showed no more than mild abnormalities in musculoskeletal function, including full strength in the extremities to warrant anything less than light exertional work (Ex. B10F; B12F; B14F). Although I departed from the [s]tate agency opinion in finding the claimant had moderate social limitations instead of mild, the residual functional capacity offered by the [s]tate agency psychological consultants adequately addressed the claimant's subjective complaints of social anxiety when out in public by

12

limiting her to occasional interaction with the public. Yet, they too noted the claimant's conservative treatment.

(Tr. 18.)

The ALJ found Dr. Hatton's examining opinions "only somewhat persuasive" (*Id*.)  The ALJ discussed Dr. Hatton's opinions as follows:

> Dr. Hatton indicated that the claimant's ability to maintain in [sic] a competitive employment situation was somewhat guarded. However, Dr. Hatton's opinion is vague and does not offer specific vocational limitations or abilities. Further, the claimant was not prescribed medication at this time. Dr. Hatton saw the claimant for a single visit, thus the report summarizes only a snapshot in time.

(*Id*.)

Next, the ALJ analyzed Dr. Beamon's opinions and found them persuasive.  The ALJ stated as follows:

> Dr. Beaman did not specify certain functional limitations (Ex. B9F). However[,] his report is generally consistent with the physical examination findings noted during primary care and cardiology visits that showed some abnormalities, but normal muscle strength, normal gait, and no motor deficits. Thus, I find his report persuasive and have provided appropriate limitations in the residual functional capacity herein.

(Tr. 18-19.)

Then, at step four, the ALJ determined that Plaintiff was able to perform her past relevant work as a housekeeper.  (Tr. 19.)  Therefore, the ALJ concluded that Plaintiff was not disabled from March 18, 2020, through November 10, 2021.  (*Id*.)

13

### D.   Analysis

The "ALJ is required to build an accurate and logical bridge from the evidence to [her] . . . conclusion[,] and the ALJ['s] analysis must be sufficiently articulated for the Court to determine if the requisite accurate and logical bridge from the evidence to the conclusion exists." *Crecelius v. Comm'r of Soc. Sec.*, No: 2:17-cv-320-FtM-99CM, 2018 WL 4042856, at *2 (M.D. Fla. Aug. 24, 2018) (citation and internal marks omitted); *see also Allen v. Comm'r of Soc. Sec.*, Case No: 6:17-cv-203-Orl-GJK, 2018 WL 2981433, at *4 (M.D. Fla. June 14, 2018) (quoting *Ricks v. Astrue*, No. 3:10–cv–975–TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012)) ("[W]ithout a clear statement from the ALJ either: 1) incorporating [c]laimant's limitations into the RFC finding; or 2) identifying the specific functional limitations that were rejected and correlating specific medical evidence to those rejected functional limitations, the ALJ fail[s] to 'build an accurate and logical bridge from the evidence to his conclusion.'").

The Court reviewed Dr. Anguas-Keiter's and Dr. Green's records and opinions carefully, and finds that the ALJ did not adequately discuss the limitations mentioned by these two doctors.  Specifically, the ALJ failed to address the limitations found by Dr. Anguas-Keiter and Dr. Green related to Plaintiff's ability to maintain concentration and her ability to complete a

14

normal workday and workweek.  To illustrate, Dr. Green, noted that Plaintiff was moderately limited in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 154-155.)  In addition, Dr. Green expressly noted that Plaintiff "has mild to moderate difficulty maintaining concentration for extended periods."  Notably, Dr. Janet Anguas-Keiter, Psy. D., also expressly noted that Plaintiff "has mild to moderate difficulty maintaining concentration for extended periods." (Tr. 97.)

These opinions were completely omitted from the RFC findings and hypothetical to the VE, despite the ALJ finding the opinions of Dr. Anguas-Keiter and Dr. Green persuasive.  To be sure, the ALJ specifically mentioned the doctors' limitations regarding Plaintiff's physical ability and social interaction ability, however, the ALJ completely neglected the limitations regarding concentration and ability to complete a normal workday or workweek.  (*See* Tr. 18.)  More importantly, the ALJ did so without explanation.  Such cherry-picking from the limitations identified by a particular doctor —without explanation— is forbidden.  *See e.g., Williams v. Saul*, No. 5:18-cv-01464-GMB, 2020 WL 733815, at *14 (N.D. Ala. Feb. 13, 2020) (reasoning that "cherry-picking is forbidden" when an ALJ is assessing the record).

15

Furthermore, it is not clear what impact these limitations, if included in the RFC, would have had on Plaintiff's ability to perform her past work. Indeed, without the ALJ stating with particularity how the limitations set forth by Dr. Anguas-Keiter and Dr. Green affected Plaintiff's RFC finding and her ability to return to her past relevant work, the Court cannot determine whether the decision of the Commissioner is supported by substantial evidence. Therefore, the Court finds that the error is not harmless. *See, e.g., Pabon v. Comm'r of Soc. Sec.*, No. 6:15-cv-534-ORL-GJK, 2016 WL 2927607, at *3 (M.D. Fla. May 19, 2016) (finding that the ALJ's apparent rejection of lifting limitations without explanation was not harmless where it was "unclear what impact the inclusion of the lifting impairments . . . would have on [Plaintiff's] ability to perform other work in the national economy").

Defendant's arguments to the contrary are unavailing. First, Defendant points to evidence that may support a finding that the state agency doctors' opinions about Plaintiff's ability to complete a normal workday or workweek were inconsistent with the medical evidence as a whole. (Doc. 16 at 5-9.) However, the ALJ did not conduct that analysis in her decision, so the Court will not rely on those post-hoc rationalizations now to affirm the ALJ's decision. *See Volley v. Astrue*, No. 1:07-cv-0138-AJB, 2008 WL 822192, at *17 (N.D. Ga. Mar. 24, 2008) (citing *Owens v. Heckler*, 748

16

F.2d 1511, 1516 (11th Cir. 1984)) ("Post-hoc rationalizations, such as that advanced by the Commissioner in this case, cannot be used to affirm the ALJ's decision.").  Put simply, "[i]t is not the duty of the Court to supply reasons for the ALJ's finding; rather, that duty rests with the ALJ." *Bright v. Saul*, No. 3:18-cv-1236-J-JRK, 2020 WL 1243244, at *7 (M.D. Fla. Mar. 16, 2020); *see also Austin v. Astrue*, No. 5:07-cv-52-MCR-EMT, 2008 WL 2385520, at *8 (N.D. Fla. June 9, 2008) (recognizing the Commissioner's arguments in support of the ALJ's discounting of a physician's opinion, but stating that "[w]hile [the arguments] may be true, the ALJ did not make these findings").

Second, Defendant attempts to cite the 10% off task finding as a sufficient factor addressing the state agency doctors' limitations.  However, the ALJ's failure to explain how she reached the 10% off task determination only compounds the issue.  To be specific, the ALJ's failure to explain the 10% time off limitation is particularly troublesome because a higher percentage may have been outcome determinative.  *See Tammy C. v. Comm'r of Soc. Sec.*, No. 3:20-cv-00074-RGV, 2021 WL 9666636, at *12 (N.D. Ga. Sept. 30, 2021) (concluding that when an ALJ makes a specific off task calculation that has the potential to be work preclusive he or she must explain the basis for that determination).  And, because of the initial omissions, it is unclear whether the ALJ meant for the 10% to encompass the state agency doctors' limitations.  Defendant's attempt to state otherwise is yet another post-hoc

rationalization.  *See Santiago v. Comm'r of Soc. Sec.*, No. 6:19-cv-2038-ORL-DCI, 2020 WL 13444217, at *4 (M.D. Fla. Nov. 20, 2020) ("Essentially, it appears that the Commissioner stood in the shoes of the ALJ, analyzed the record evidence anew, and now cites what the Commissioner believes to be substantial evidence supporting the ALJ's decision. But the Court will not rely on the Commissioner's post-hoc arguments.") (internal citation omitted).

As it stands, the Court cannot ascertain whether the ALJ gave any consideration to the state consultants' findings that Plaintiff had moderate limitations related to completing a normal workday and workweek without interruptions from psychologically based symptoms and in her ability to perform at a consistent pace without an unreasonable number and length of rest periods.  Nor can the Court ascertain the impact these potential limitations have on Plaintiff's ability to work.  As a result, it is unclear whether the ALJ evaluated Plaintiff's disability claims in accordance with the regulations and prevailing case law.  Ultimately, the combination of these errors frustrates the Court's ability to conduct a meaningful review. Therefore, the ALJ did not fulfill her duty to build an accurate and logical bridge.

In light of the above, the Court need not address Plaintiff's other challenges.  *See Demenech v. Sec'y of Dep't of Health & Hum. Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (declining to address the claimant's

remaining arguments due to the conclusions reached in remanding the case);

*Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam)

(stating that where remand is required, it may be unnecessary to review

other claims raised) (citations omitted).  On remand, however, the ALJ must

reconsider the opinions of Dr. Anguas-Keiter and Dr. Green as part of the

RFC.  In addition, the ALJ should review the opinions of Dr. Hatton and Dr.

Beamon and conduct any further proceeding deemed appropriate.

Accordingly, it is **ORDERED**:

1.    The Commissioner's decision is **REVERSED and REMANDED**

pursuant to sentence four of 42 U.S.C. § 405(g), with instructions to the ALJ

to reconsider the opinions of Dr. Anguas-Keiter and Dr. Green as part of the

RFC.  In addition, the ALJ should review the opinions of Dr. Hatton and Dr.

Beamon and conduct any further proceeding deemed appropriate.

2.    The Clerk of Court is directed to enter judgment accordingly,

terminate any pending motions, and close the file.

3.    The judgment should state that if Plaintiff were to ultimately

prevail in this case upon remand to the Social Security Administration, any

motion for attorney's fees under 42 U.S.C. § 406(b) and/or 42 U.S.C. §

1383(d)(2) must be filed within fourteen (14) days from plaintiff's counsel's

receipt of any "close-out" letter.  The motion must include the agency letter

stating the amount of past-due benefits withheld, include any applicable

contingency fee agreement, and establish the fee is reasonable for the services rendered.  This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on September 12, 2023.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record